UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DALE GRIMM,

    Plaintiff,

vs.

BETH CAPPELLI, *et al.*,

    Defendants.

Case No. 3:20-cv-3

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANT CAPPELLI'S MOTION TO DISMISS (DOC. 3) BE GRANTED; (2) PLAINTIFF'S CLAIMS AGAINST DEFENDANT CAPPELLI BE DISMISSED; (3) CLAIMS AGAINST DEFENDANTS SAMPSON AND DONNATELLI BE DISMISSED FOR FAILURE OF SERVICE OF PROCESS UNDER FED. R. CIV. P. 4(M); AND (4) THIS CASE BE TERMINATED ON THE COURT'S DOCKET**

This *pro se* civil case is before the Court on the motion to dismiss filed by Defendant Beth Cappelli on January 6, 2020. Doc. 3. Plaintiff filed a memorandum in opposition to Defendant's motion to dismiss. Doc. 7. Defendant did not file a reply and the time for doing so has expired. The Court has carefully considered the foregoing, and Defendant's motion is now ripe for decision.

I.

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

1

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

## II.

The entirety of this action arises from Plaintiff's visit to the Fairborn, Ohio Municipal Court on December 18, 2017 and his encounter with a security official upon entering the courthouse. *See* doc. 2. Specifically, Plaintiff alleges that, upon entering the Fairborn Municipal Court that day, Defendant Bob Sampson (presumably a security officer at the courthouse) made Plaintiff empty his pockets and walk through "a portal-type device" (presumably a standard metal detector). *Id.* When the metal detector "made a beeping sound as [he] walked through," Defendant Sampson "waved a wand-type device around [his] body." *Id.*

Upon leaving the courthouse, Plaintiff "confronted" Sampson and "reminded him that, in order to look through [Plaintiff's] pockets, [Sampson] was required by law to have a warrant." *Id.* Later, Plaintiff allegedly wrote a letter to Defendant Beth Cappelli, a judge at the Fairborn Municipal Court, "outlining his experience . . . and requesting information on . . . Sampson so that action could be taken against him." *Id.* Defendant Mark Donnatelli -- whose affiliation with the Fairborn Municipal Court is not alleged by Plaintiff -- allegedly responded to Plaintiff's letter by citing rules adopted by the Supreme Court of Ohio regarding courthouse security measures. *Id.*

On December 4, 2019, Plaintiff filed this action for compensatory damages in the Greene County, Ohio Court of Common Pleas against Defendants Sampson, Cappelli, and Donnatelli alleging a violation of his rights under the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution to be free from unreasonable searches and seizures. *Id.* On January 3, 2020, Defendant Cappelli appeared in the state court action and timely removed the case to this Court and moved to dismiss the claims against her. *See* docs. 1, 3. That motion will be addressed *infra*.

Defendants Sampson and Donnatelli have not appeared in this action and, absent evidence of record showing otherwise, it appears that Plaintiff has not successfully served them as required.

Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time." In cases removed to a federal court from a state court, the 90-day period set forth in Rule 4(m) commences on the date removal is complete. *See Medlen v. Estate of Meyers*, 273 F. App'x 464, 470 (6th Cir. 2008).

This case having been removed to this Court on January 3, 2020, the time in which Plaintiff was required to serve Defendants Sampson and Donnatelli under Fed. R. Civ. P. 4(m) expired on April 2, 2020. The Court previously notified Plaintiff of his duty to complete service of process on Defendants Sampson and Donnatelli on or before April 2, 2020 and also notified him that his failure to do so could result in the dismissal of his claims against them. Doc. 8 at PageID 57. Because Defendants Sampson and Donnatelli were not served on or before April 2, 2020, and because Plaintiff has not requested an extension of time to complete such service, the undersigned **RECOMMENDS** that claims against Defendants Sampson and Donnatelli be **DISMISSED** pursuant to Fed. R. Civ. P. 4(m).

### III.

Initially, the Court addresses Plaintiff's claim that the conduct at issue in this case violates Article I, Section 14 of the Ohio Constitution.[2] Doc. 2 at PageID 33-34. Court have routinely noted that "violations of rights secured under the Ohio Constitution do not, in and of themselves, confer a private right of damages[.]" *Wesaw v. City of Lancaster*, No. 22005CV0320, 2005 WL 3448034, at *5 (S.D. Ohio Dec. 15, 2005) (*see also Provens v. Stark Cnty. Bd. of Mental*

---

[2] Article I, Section 14 of the Ohio Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized." Ohio Const. art I, § 14.

*Retardation & Developmental Disabilities*, 594 N.E.2d 959, 966 (Ohio 1992) (finding "no private constitutional remedy for the plaintiff-appellant's claims in that the Ohio Constitution itself does not provide for a civil damage remedy"). Accordingly, Plaintiff fails to state a claim for damages under the Ohio Constitution and, therefore, such claim must be dismissed.[3]

## IV.

The Court next addresses Plaintiff's claim alleging that his Fourth Amendment rights under the United States Constitution were violated. Doc. 2 at PageID 33-34. Plaintiff appears to assert such claim under 42 U.S.C. § 1983, which "provides for a private right of action against any person who, under color of state law, violates another person's federal rights." *Hardin v. Straub*, 954 F.2d 1193, 1198 (6th Cir. 1992).

"To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Green v. Throckmorton*, 681 F.3d 853, 859-60 (6th Cir. 2012) (citing *Waters v. City of Morristown, Tenn.*, 242 F.3d 353 (6th Cir. 2001)). In other words, to state a claim under § 1983, a plaintiff must allege "(1) deprivation of a right secured by the federal Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Notably, individuals against whom civil rights claims are asserted under § 1983 are "only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012). As a result, claims asserting "violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Thus, the

---

[3] Notably, such conclusion would likewise apply to Plaintiff's claims against Defendants Sampson and Donnatelli.

5

mere "listing [of] names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery[.]" *Gilmore v. Corrections Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149 (1978)); *see also Frazier v. Mich.*, 41 F. App'x 762, 764 (6th Cir. 2002).

Here, Plaintiff alleges that Judge Cappelli violated the Fourth Amendment "by approving illegal searches" at the courthouse. Doc. 2 at PageID 33. While § 1983 liability "cannot be premised solely on a theory of *respondeat superior*, or the right to control employees[,]" it does extend to instances where a supervisory official "encouraged the specific incident of misconduct[,]" such as where the supervisory official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

Even if the Court were to assume, *arguendo*, that Plaintiff adequately alleges Defendant Cappelli "approved" the routine security search at issue, to prevail, Plaintiff must still overcome questions of whether Defendant Cappelli, in her individual capacity as a municipal judge, is entitled to certain immunities. For instance, "[i]t is a well-entrenched principle in our system of jurisprudence that judges are generally absolutely immune from civil suits for money damages[,]" including § 1983 claims. *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Such immunity applies only to a judge's "actions undertaken in a judicial capacity[,]" *id.* at 1116, and does not apply to acts "not taken in the judge's judicial capacity" or where an act, "though judicial in nature, [is] taken in the complete absence of all jurisdiction." *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997) (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

Again, assuming, *arguendo*, that Defendant Cappelli did approve the subject courthouse security measures at the Fairborn Municipal Court, a question exists as to whether such act is judicial in nature or administrative in nature. Whether or not an act is judicial or not requires

6

consideration of two factors: "[1] the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and . . . [2] the expectations of the parties, *i.e.*, whether they dealt with the judge in his [or her] judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). The undersigned need not reach that question of whether the approval of routine courthouse security measures is a "judicial act" because, even assuming, *arguendo*, that absolute judicial immunity does not apply, Defendant Cappelli is otherwise entitled to qualified immunity.

"It is undisputed that a judicial officer performing administrative acts, like any governmental official, may assert the defense of qualified immunity." *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993). Qualified immunity immunizes state actors "from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Simply put, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). State actors are entitled to qualified immunity unless (1) "the facts alleged make out a violation of a constitutional right"; and (2) "the right at issue was 'clearly established' when the event occurred such that a reasonable [state actor] would have known that his [or her] conduct violated it[.]" *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

Plaintiff fails to allege facts showing that Defendant Cappelli -- or either of the other Defendants -- violated Plaintiff's clearly established Fourth Amendment rights. The Fourth Amendment states that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV; *see also Florida v. Jardines*, 569 U.S. 1, 5 (2013). "The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures." *United States v. Sharpe*, 470 U.S.

7

675, 682 (1985). In fact, the Supreme Court of the United States has repeatedly suggested that routine suspicionless searches "at entrances to courts and other official buildings" are reasonable and not violative of the Fourth Amendment. *Chandler v. Miller*, 520 U.S. 305, 323 (1997); *City of Indianapolis v. Edmond*, 531 U.S. 32, 47-48 (2000). As a result, his Fourth Amendment claim against Defendant Cappelli in her individual capacity under § 1983 should be dismissed.[4]

Insofar as Plaintiff may assert a § 1983 claim against Defendant Cappelli in her official capacity, such claim is also subject to dismissal. "[A] section 1983 action against [an official] in his or her official capacity is treated as an action against the [public] entity itself." *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State"). Here, an official capacity suit against Defendant Cappelli would be a suit against the Fairborn Municipal Court which, as an arm of the state of Ohio, is entitled to sovereign immunity under the Eleventh Amendment. *Ward v. City of Norwalk*, 640 F. App'x 462, 464 (6th Cir. 2016).

Even assuming Eleventh Amendment sovereign immunity did not apply, the official capacity claims would still be subject to dismissal. Government entities are considered persons under § 1983 and "may be sued for constitutional deprivations." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). However, like individuals, government entities cannot be held liable for the acts of employees or officials on a *respondeat superior* theory. *Id.* at 693. Instead, an official policy or custom must be the "moving force" behind the alleged constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To demonstrate *Monell* liability, one must: (1) identify the policy or custom; (2) connect the policy to the governmental entity; and (3) show injury of a constitutional magnitude incurred because of that policy's execution. *Alkire v.*

---

[4] The same conclusion would apply to claims asserted against Defendants Sampson and Donnatelli in their individual capacities.

8

*Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (internal citations omitted). As noted above, Plaintiff cannot show a constitutional violation, *supra*, and, as a result, his official capacity claims should be dismissed.

**V.**

Based on all of the foregoing, the undersigned **RECOMMENDS** that: (1) Defendant Cappelli's motion to dismiss (doc. 3) be **GRANTED**; (2) Plaintiff's claims against Defendant Cappelli be **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6); (3) Plaintiff's claims against Defendants Sampson and Donnatelli be **DISMISSED** under Fed. R. Civ. P. 4(m) for failure to timely serve them; and (4) this case be **TERMINATED** on the Court's docket.

Date: April 6, 2020

s/Michael J. Newman
Michael J. Newman
United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).